UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL B.,<br><br>                    Plaintiff,<br><br>v.<br><br>Kilolo KIJAKAZI, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No.: 20-cv-1713-AGS<br><br>**ORDER ON SUMMARY-JUDGMENT MOTIONS (ECF 14 & 17)** |

In this disability-benefits appeal, claimant challenges the constitutionality of all proceedings under the former Social Security Commissioner and criticizes the agency judge's handling of evidence supporting his disability claim.

## BACKGROUND

In May 2019, plaintiff Michael B. testified at a hearing on his application for Social Security disability benefits. (AR 276.) In August 2019, an Administrative Law Judge denied his application, despite Michael's testimony about the severity of his impairments as well as the corroborating statement of his wife Mary B. (*See* AR 282–83, 287–88.)

Amid these proceedings, Andrew M. Saul became the Commissioner of Social Security. *See* Soc. Sec. Admin., *Social Security Commissioners* https://www.ssa.gov/history/commissioners.html (last visited Aug. 30, 2022); (ECF 14-1, at 22). On appeal, Michael contends that Commissioner Saul's appointment and tenure were unconstitutional, which tainted his proceedings, and that the ALJ offered insufficient reasons for discounting Michael's testimony and Mary's statement.

## STANDARD OF REVIEW

A court may set aside the Social Security Administration's denial of benefits only when "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record" as a whole. *See Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but

may be less than a preponderance." *See Attmore*, 827 F.3d at 875 (quotation marks omitted). When the evidence is "susceptible to more than one rational interpretation," a court must defer to the ALJ. *Id*. Even when the ALJ errs, "we must affirm if the error is harmless." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).

## DISCUSSION

**A.  Constitutional Challenge to Social Security Commissioner's Tenure**

Michael argues that Social Security Commissioner Saul's "unconstitutional appointment and tenure" rendered Michael's entire proceedings constitutionally infirm.[1] (*See* ECF 14-1, at 21–22.) The parties agree that the statute under which Commissioner Saul was appointed is unconstitutional—at least as to its removal provision. (*See id*.; ECF 17, at 16–17.) That statute guarantees that the Commissioner will only be removed for "neglect of duty or malfeasance in office." *See* 42 U.S.C. § 902(a)(3). But the Constitution "prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Thus, the Supreme Court has struck down similar removal restrictions for violating separation of powers. *See id*. (invalidating a "for cause" restriction on the President's authority to remove the Director of the Federal Housing Finance Agency); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020) (striking down a removal restriction that limited the President to removing the Director of the Consumer Financial Protection Bureau "only for inefficiency, neglect of duty, or malfeasance").

The removal provision for the Social Security Commissioner likewise "violates separation of powers principles" and is unconstitutional. *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022). Michael contends that this renders the Social Security

---

[1] In his reply brief, Michael also complains that "two-layered removal" raises "another constitutional defect." (ECF 18-1, at 5.) This Court declines to consider this contention as it "was not 'argued specifically and distinctly in [the] opening brief,' nor adequately developed in the reply brief." *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th __, No. 21-16209, 2022 WL 3206683, at *10 n.11 (9th Cir. Aug. 9, 2022).

Administration's "structure unconstitutional" and all agency actions during Commissioner Saul's tenure "constitutionally defective." (ECF 14-1, at 21–22.) But this argument goes much too far, as the removal restriction "is severable from the remainder of the statute." *See Kaufmann*, 32 F.4th at 849. That is, courts must "sever the removal provision and hold that the President possesses the authority to remove the Commissioner of Social Security at will." *Id*. At all events, the unconstitutional restriction "does not affect the *authority* of the underlying agency officials to act." *Id.* (citing *Collins*, 141 S. Ct. at 1787–88 & n.23).

To mount a successful constitutional challenge, then, Michael must "show how the unconstitutional removal provision *actually harmed*" him. *See Kaufmann*, 32 F.4th at 849. For instance, a claimant might be harmed if the President "express[ed] displeasure" with the Commissioner and "asserted that he would remove [that official] if the statute did not stand in the way." *Collins*, 141 S. Ct. at 1789. Yet Michael points to no evidence that President Trump considered removing Commissioner Saul when Michael's disability case was adjudicated in 2019 and 2020. Rather, Michael's proof of harm is based on comments and actions by President *Biden*. (*See* ECF 18-1, at 8–9.) But President Biden's dissatisfaction with the Commissioner sheds no light on President Trump's feelings a year or two earlier.

In short, there "is no link between the ALJ's decision . . . and the allegedly unconstitutional removal provisions." *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021). And this Court cannot presume that the removal restriction "alone tainted the ALJ's decision." *Id*. at 1137.

**B.   Michael's Subjective Symptom Testimony**

The next issue is whether the ALJ erred in disbelieving Michael's testimony about the severity of his limitations. The ALJ disregarded several aspects of Michael's testimony, including that he "is a fall risk and can stand for only about 20 minutes," "uses a cane to ambulate and balance," "is unable to stand or sit for long periods at a time," suffers from "memory loss," "can lift 15 pounds" but not "heavy objects," "can stand/walk 20 minutes

. . . before needing to stop and rest," "can pay attention for only 10 minutes," and "does not handle stress or changes in routine well." (AR 283.)

In evaluating the credibility of subjective symptom testimony, the ALJ must determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the . . . symptoms alleged." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). If so, and absent evidence of malingering, the ALJ may reject the claimant's testimony about symptom severity only if the ALJ offers "'specific, clear and convincing reasons' for the rejection." *Id*. "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). The ALJ offered two reasons for discounting Michael's symptom-severity allegations: (1) that they were unsupported by the objective medical record and (2) that they were undermined by Michael's demeanor and testimony at his disability hearing.

### 1. *Objective Medical Record*

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," an ALJ may consider whether claimant's testimony is supported by "the medical evidence." *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ appropriately noted the tension between the relatively mild objective medical record and Michael's more extreme testimony. For example, the ALJ noted that at an April 2018 independent orthopedic consultation, Michael had no "problems with balance [or] with ambulating and moving about the examination" and that although he had "a cane with him," he "did not use [it] to ambulate." (AR 284.) Similarly, the ALJ accurately noted that the record is full of normal or near-normal examinations concerning strength, gait, and range of motion. (AR 284; *see, e.g.*, AR 1322 ("5/5 [strength] x 4 limbs"); AR 1331 (noting "tenderness" and inability "to fully flex left thumb" but "normal" "bulk," "tone," and "strength" in "all four extremities"); AR 1334 (noting "tenderness" on left hand, but "only a minimal contracture present" and "no triggering"); AR 1341 ("**Gait** normal"); AR 1347 (noting "tenderness" on left hand, but

4

"only a minimal contracture present"); AR 1356 ("Muscle strength 5/5 all groups inserting into feet" and "**Gait** steady"); AR 1553–58 (normal "range of motion" in "Shoulders," "Elbows," "Wrists," "Hips," "Knees," and "Ankles," with some loss in his fingers, "Normal motor strength throughout the upper and lower extremities bilaterally (5/5)"); AR 1592 ("Motor: Tone and bulk normal. Strength 5/5 in the upper and lower extremities in all motor groups," "**Gait**: Antalgic on straightaway, can heel walk, toe walk"), AR 1710–11 ("WNL [within normal limits]" for "Active Range of Motion" in the "Shoulder," "Elbow," "Forearm," "Wrist," and "Thumb" but reduced on the "Finger: Middle: Left hand" "2 weeks 3/7 days" after surgery on that finger); AR 1718–19 (same, but somewhat improved range of motion in left middle finger "5 weeks post-op"); AR 1725–26 (same at "6 weeks post-op"); AR 1743–44 (same at "8 weeks post-up" but further improved range of motion, "Strength (lbs.): right/left 46/26lb grip"); AR 1751 ("muscle strength 5/5 all groups inserting into feet," "Gait steady with cane"); AR 1915 ("diffuse pain across lumbar area . . . motor normal," "[r]ight ankle with minimal lateral swelling and pain, good rom). *Cf.* AR 1583 ("Upper extremity ROM WNL (within normal limits)," "Upper extremity strength: triceps, biceps 4/5," "Lower extremity strength: Decreased in PF, DF," "**Gait**: Limping").)

  Michael doesn't dispute the ALJ's reading of the record but instead offers two counterarguments. (*See* ECF 14-1, at 12–13.) First, Michael maintains that the ALJ did not "specifically discuss or provide reasons to reject [his] testimony." (*Id.* at 12.) Not so. The ALJ spelled out the parts of Michael's testimony he questioned and then listed evidence refuting those parts. An ALJ need not "perform a line-by-line exegesis of the claimant's testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). And even if the ALJ explained his "'decision with less than ideal clarity,' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoting *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004)).

  Second, Michael argues that the "multiple surgical procedures to treat his severe impairments demonstrate[]" that the "medical evidence actually supports his credibility in

that he has sought out and underwent non-conservative modes of treatment." (ECF 14-1, at 12.) But the ALJ did not ignore Michael's aggressive course of treatment. He merely surmised that the surgeries were successful, based on Michael's comparatively normal post-surgical testing and examination notes. (*See generally* AR 283–85; *see also* AR 284 (highlighting "*improvement following treatment*, which includes various surgeries noted above" (emphasis added)); AR 285 ("His carpal tunnel surgery did well and he has no residuals from that.").) Of course, Michael's reading of the record is a reasonable one, but so is the ALJ's. And the ALJ's conclusion is supported by substantial evidence. When faced with an ALJ's "rational interpretation" drawn from "reasonabl[e]" record "inferences," this Court "must uphold" that reading. *Molina*, 674 F.3d at 1111.

So, this ground is a clear and convincing reason to discount Michael's credibility.[2]

### 2. *The ALJ's Hearing Observations*

Next, the ALJ concluded that Michael's "demeanor and testimony at the hearing" undermined his claims about his symptom "severity." (AR 281.) The ALJ went on to give examples: "[h]is answers demonstrated good memory recall and logical thinking" and "reflected good social interaction and concentration, persistence and pace." (*Id.*)

Michael doesn't deny those observations but seeks to avoid their import for two reasons. First, he contends that the Commissioner offered them as a "*post hoc* rationale"

---

[2] An ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the Ninth Circuit has sometimes treated a lack of objective medical evidence differently than a direct contradiction with the medical record, as here. For example, in *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the ALJ rejected claimant's testimony "that he can lift only 10 pounds occasionally in favor of Dr. Patton's contradictory opinion that he can lift up to 10 pounds frequently." *Id.* at 1161. The Court held that this sort of "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* The identical type of direct contradiction here could—by itself—justify the ALJ's decision to reject Michael's testimony. But this Court need not rely solely on that rationale, as the ALJ provided another valid reason beyond the medical record.

that was "not articulate[d] by the ALJ." (ECF 18-1, at 3.) But that's not accurate. The ALJ wrote that Michael's "demeanor and testimony at the hearing . . . undermines [his] allegations, *including the severity and limiting effects* of his impairments." (AR 281 (emphasis added).)

Next, Michael asserts that, when determining credibility, the ALJ may not engage in the "'sit and squirm' jurisprudence" of analyzing a claimant's demeanor. (*See* ECF 18-1, at 3.) Yet the Ninth Circuit has repeatedly endorsed the role of demeanor evidence in credibility analysis. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (affirming ALJ's reliance on a claimant's "demeanor at the hearing" to find "she seemed to engage in considerable histrionic exaggeration"); *Molina*, 674 F.3d at 1120–21 (ruling that ALJs have the "prerogative to determine the credibility of witnesses" because they are "generally in a unique position to observe the witnesses' demeanor and conduct firsthand"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (noting that an ALJ may properly consider whether a claimant "was able to testify in a responsive manner without any noticeable problems with memory or thought content"); *Moseley v. Saul*, 780 F. App'x 514, 515 (9th Cir. 2019) (holding that the ALJ did not "err in considering [claimant's] demeanor while testifying as 'one among many' factors bearing upon credibility"); *see also Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p (S.S.A. Oct. 25, 2017) (requiring ALJs to "consider any personal observations" of claimants while testifying, including "how consistent those observations are with [claimant]'s statements about his or her symptoms as well as with all of the evidence in the file"). Thus, Michael's criticism is meritless, and this ground is also a valid reason for the ALJ's decision.

Since both reasons were clear, convincing, and supported by substantial evidence, the ALJ did not err in discounting Michael's testimony.

**C.    Michael's Wife's Statement**

Finally, Michael faults the ALJ for not giving "germane" reasons "to reject [his wife Mary's] testimonial evidence." (ECF 14-1, at 18; *see also id*. at 17.) In fact, the ALJ offered

7

*no* reasons for disregarding Mary's statement. (*See* AR 287.) But no reasons were needed. Under the current regulations, which took effect March 27, 2017, "ALJs are not required to articulate specific reasons for their findings about the persuasiveness of nonmedical-source testimony, and instead must merely show that they considered such evidence in deciding the claim." *Mary M. v. Kijakazi*, No. 20-CV-1457-AGS, 2022 WL 891445, at *6 (S.D. Cal. Mar. 25, 2022); *see also* 20 C.F.R. § 404.1502(e)(4) ("Nonmedical source[s] include[] . . . [f]amily members . . . ."); 20 C.F.R. § 404.1520c(d) (ALJs are "not required to articulate how [they] considered evidence from nonmedical sources using the requirements [for medical sources].").

The ALJ complied with the current regulatory framework by showing that he "considered [Mary's] evidence in deciding the claim." *See Mary M.*, 2022 WL 891445, at *6. That is, the ALJ wrote, "All the evidence relevant to the claim has been *considered*, including statements." (AR 287 (emphasis added).) And the ALJ even cited to Mary's statement. (*Id.* (citing "Ex. 5E/4-11"); AR 1201–08 (Exhibit 5E; Mary's report).)

At oral argument before this Court—rather than dispute the above analysis— Michael's counsel changed tack slightly. Counsel argued that the ALJ mistakenly thought that the regulations didn't require him "to consider [Mary's statement] as opinion evidence after March 27, 2017." (*See also* AR 287 (ALJ concluding that Mary's statement "is not opinion evidence for cases filed on or after March 27, 2017").) The Court agrees that the ALJ did not consider Mary's statement as opinion evidence, but that was not a mistake. Under the old regulations, nonmedical-source statements like Mary's would indeed qualify as lay "opinions." *See* 20 C.F.R. § 404.1527(f) (explaining the consideration of "[o]pinions . . . from nonmedical sources" for claims filed "before March 27, 2017"). But not under the current regulations. Now "nonmedical sources" like Mary merely provide "information or statement[s]," and only "medical source[s]" render "opinions." *See* 20 C.F.R. § 404.1513(a)(4) ("Evidence from nonmedical sources is any information or statement(s) . . . ."); 20 C.F.R. § 404.1520c (contrasting "medical opinions" and "evidence from nonmedical sources"). The ALJ applied the correct legal framework.

8

At any rate, even if the ALJ mishandled Mary's statement, any error would be harmless. Even under the old regulations—which had more stringent requirements for such evidence—an ALJ could disregard a nonmedical source's statement when (1) the ALJ appropriately rejected the claimant's testimony, and (2) the nonmedical source's "testimony was similar to [claimant's] complaints." *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that when the wife's "testimony was similar to [claimant's] complaints" and the ALJ properly rejected claimant's testimony, "it follows that the ALJ also gave germane reasons for rejecting [the wife's] testimony"); *see also Molina*, 674 F.3d at 1122 (holding that ignoring lay-witness testimony altogether "is harmless" when "the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims"). This dooms Michael's argument. His testimony and Mary's statement both make similar points about Michael's functional limitations. (*Compare* AR 283 (Michael's testimony) *with* AR 1201, 1206 (Mary's statement).) Michael has never contested that point, either when raised in the Commissioner's brief (*see* ECF 17, at 16) or by the Court at oral argument. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (holding that Social Security "issue is waived" because claimant "did not raise [it] before the district court"). Since Michael's testimony was appropriately rejected on this point, any error in considering Mary's similar statement is harmless.

## CONCLUSION

Thus, Michael's summary-judgment motion is denied, and the Commissioner's cross-motion for summary judgment is granted. The Clerk is directed to issue a judgment and close this case.

**AFFIRMED**.

Dated:  August 30, 2022

_____
Hon. Andrew G. Schopler
United States Magistrate Judge